# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NADYA HUSSAIN,<br><br>               Plaintiff,<br><br>v.<br><br>TD BANK, N.A. and BANK OF AMERICA, N.A.<br><br>              Defendants. | Civil Action No.: 2:24-CV-524-MEF-JBC<br><br><br>Motion Day: March 18, 2024 |

---

**DEFENDANT TD BANK, N.A.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

**BROWN & CONNERY, LLP**
Jennifer A. Harris, Esq.
James P. Clancy, Esq.
6 North Broad Street
Woodbury, New Jersey 08096
(856) 812-8900
jharris@brownconnery.com
jclancy@brownconnery.com

*Attorneys for Defendant, TD Bank, N.A.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ..............................................................1

RELEVANT FACTS AND PROCEDURAL HISTORY ........................................2

LEGAL ARGUMENTS...........................................................................3

   I.   MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)............3

   II.   THE UCC PRECLUDES PLAINTIFF'S COMMON LAW CLAIMS..........3

   III.   EVEN IF THE COURT FINDS THAT PLAINTIFF'S COMMON LAW
       CAUSES OF ACTION ARE NOT DISPLACED BY THE UCC, THE
       COMMON LAW CLAIMS INDEPENDENLTY FAIL AS A MATTER OF
       LAW ........................................................................................6

       A. Common Law Negligence....................................................7

       B. Breach of Contract...........................................................8

       C. Breach of Fiduciary Duty ..................................................9

       D. Common Law Fraud..........................................................9

   IV.   PLAINTIFF'S NEW JERSEY CONSUMER FRAUD ACT CLAIM IS
       ALSO DISPLACED BY THE UCC ..............................................11

   V.   PLAINTIFF'S UCC CLAIM FAILS AS A MATTER OF LAW ...............13

CONCLUSION ...................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*ADS Assocs. Grp., Inc. v. Oritani Savings Bank*,
   219 N.J. 496 (2014) .................................................................. 5, 7, 14, 15

*Cetel v. Kirwan Fin. Group, Inc.*,
   460 F.3d 494 (3rd Cir. 2006) ................................................................. 13

*Essgeekay Corp. v. TD Bank, N.A.*,
   2018 U.S. Dist. LEXIS 214691 (D.N.J. Dec. 19, 2018) ........................... 5

*Est. of Paley v. Bank of America*,
   420 N.J. Super. 39 (App. Div. 2011) ............................................... 11, 12

*First Atlantic Federal Credit Union v. Perez*,
   391 N.J. Super. 419 (App. Div. 2007) ..................................................... 4

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) .................................................................. 10

*Gennari v. Weichert Co. Realtors*,
   148 N.J. 582 (1997) ............................................................................... 10

*Globe Motor Car Co. v. First Fid. Bank, N.A.*,
   273 N.J. Super. 388 (Law Div. 1993) ............................................... 7, 8, 9

*Green v. Green Mountain Coffee Roasters, Inc.*,
   279 F.R.D. 275 (D.N.J. 2011) ......................................................... 12, 13

*Harborview Capital Partners, LLC v. Cross River Bank*,
   600 F. Supp. 3d 485 (D.N.J. 2022) .................................... 5, 8, 14, 15, 16

*Klemm v. Labor Cooperative Nat'l Bank*,
   117 N.J.L. 284 (E. & A. 1936) .......................................................... 7, 9

*LD Mgmt. LLC v. First Republic Bank, Inc.*,
   2022 U.S. Dist. LEXIS 175925 (D.N.J. Sep. 27, 2022) .......................... 8

*Morrow v. Balaski*,
   719 F.3d 160 (3d Cir. 2013) .................................................................... 3

*Nat'l Premium Budget Plan Corp. v. Nat'l Fire Ins. Co. of Hartford*,
   97 N.J. Super. 149 (Law Div. 1967) ...................................................... 10

*New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*,
    690 F.2d 339 (3d Cir. 1982) ................................................................... 4

*Pagano v. United Jersey Bank*,
    143 N.J. 220 (1996) ................................................................................ 9

*Palakovic v. Wetzel*,
    854 F.3d 209 (3d Cir. 2017) ................................................................... 3

*Remtek Servs. v. Wells Fargo Bank, N.A.*,
    2020 U.S. Dist. LEXIS 7678 (D.N.J. Jan. 16, 2020) ............................. 5

*Sheridan v. NGK Metals Corp.*,
    609 F.3d 239 (3d Cir. 2010) ................................................................... 3

*Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat. Bank*,
    390 N.J. Super. 199 (App. Div. 2007) .................................................... 4

*Townsend v. Pierre*,
    221 N.J. 36 (2015) .................................................................................. 7

*United Jersey Bank v. Kensey*,
    306 N.J. Super. 540 (App. Div. 1997) .................................................... 9

*United States ex rel. Petras v. Simparel, Inc.*,
    857 F.3d 497 (3d Cir. 2017) ................................................................... 10

*Yahn & McDonnell, Inc. v. Farmers Bank of State of Del.*,
    708 F.2d 104 (3d Cir. 1983) ................................................................... 4

## STATUTES

N.J.S.A. 12A:4A-101 ...................................................................................... 6

N.J.S.A. 12A:4A-103 ...................................................................................... 14

N.J.S.A. 12A:4A-104 ...................................................................................... 14

N.J.S.A. 12A:4A-202 ...................................................................................... 14, 15

N.J.S.A. 12A:4A-204 ...................................................................................... 15

N.J.S.A. 56:8-1 ................................................................................................ 11

## PRELIMINARY STATEMENT

Plaintiff, Nadya Hussain ("Plaintiff"), alleges in her Complaint that she personally went to a TD Bank, N.A. store in Bloomfield, New Jersey, and directed TD Bank to wire $41,000.00 from her TD Bank account. Plaintiff alleges that she transferred the funds because she received a call purportedly from the "TD Bank Fraud Department" directing her to do so, yet she does not allege that she ever conveyed that information to anyone when she visited the store to order the wire transfer. Despite the in-person wire payment order that Plaintiff admits she authorized, Plaintiff filed a Complaint asserting a litany of claims against TD Bank premised on TD Bank's alleged failure to recognize that Plaintiff had allegedly been scammed by a third party. For this, Plaintiff curiously alleges that *online banking* security guidance required TD Bank to spot the alleged fraud and stop Plaintiff from completing an *in-person* wire of her own funds. [See Complaint, Doc. No. 1-1, ¶¶ 18; 27-34]. This is not the law.

Notwithstanding her reference to supposed industry guidance, Plaintiff asserts a claim against TD Bank and Defendant Bank of America under Article 4A of the Uniform Commercial Code as adopted in New Jersey ("UCC"), which governs wire transfers. As set forth more fully below, the UCC displaces Plaintiff's common law and NJ Consumer Fraud Act claims, as those claims are premised on rights and obligations that are squarely addressed by the UCC. And all of Plaintiff's claims fail

for the simple reason that the subject wire was authorized by Plaintiff. For this reason, Plaintiff fails to state a claim on which relief can be granted.

TD Bank respectfully submits that Plaintiff's Complaint should be dismissed as to TD Bank in its entirety with prejudice.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**[1]

On or around July 14, 2023, Plaintiff received a phone call from an "unidentified threat actor purporting to be a representative of TD Bank's Fraud Department." [See Complaint, Doc. No. 1-1, ¶ 18]. The caller allegedly informed Plaintiff that her TD Bank account was compromised and that she needed to wire $41,000.00 from her TD Bank account. Id. Plaintiff proceeded to the TD Bank store in Bloomfield, New Jersey and provided wiring instructions she received from the alleged fraudster to TD Bank. Id.

On an unspecified date thereafter, Plaintiff learned she was the victim of a fraud, notified TD Bank, and filed a police report. Id. at ¶ 22.

Plaintiff filed her Complaint in New Jersey Superior Court on December 29, 2023. [See generally Complaint, Doc. No. 1-1]. On January 29, 2024, TD Bank removed this action to the United States District Court for the District of New Jersey. [See generally Notice of Removal, Doc. No. 1].

---

[1] Plaintiff's factual allegations are taken as true for purposes of this Rule 12 motion only.

## LEGAL ARGUMENTS

### I.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. Palakovic v. Wetzel, 854 F.3d 209, 219 (3d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting Ashcroft, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although factual allegations should be accepted as true, the court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013).

### II.    The UCC Precludes Plaintiff's Common Law Claims.

Plaintiff alleges five common law claims, including negligence (Count One), breach of contract (Count Two), breach of the covenant of good faith and fair dealing (Count Three), breach of fiduciary duty (Count Four), fraud (Count Six), and negligent misrepresentation (Count Seven). All of these common law claims are

displaced by the UCC. Accordingly, all of Plaintiff's common law claims should be dismissed as a matter of law.

It is well-settled that "the UCC displaces the common-law where reliance on the common law would thwart the purposes of the UCC." Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat. Bank, 390 N.J. Super. 199, 204-05 (App. Div. 2007) ("Necessarily then, the existence of such a comprehensive remedy to address plaintiff's claim of improper payment in this case precludes a common-law negligence claim against either party."); First Atlantic Federal Credit Union v. Perez, 391 N.J. Super. 419, 431 (App. Div. 2007) ("Only in very rare circumstances should a court upset the UCC's legislative scheme of loss allocation and permit a common law cause of action."); Yahn & McDonnell, Inc. v. Farmers Bank of State of Del., 708 F.2d 104, 113 (3d Cir. 1983) ("'where the [Uniform Commercial Code] provides a comprehensive remedy for parties to a transaction, a common law action is barred.'"); New Jersey Bank, N.A. v. Bradford Securities Operations, Inc., 690 F.2d 339, 345 (3d Cir. 1982) (holding that a common-law tort action is barred where the UCC provides a "comprehensive remedy" and the purpose of the UCC is to "simplify and clarify the law governing commercial transactions, fostering the expansion of commercial practices, and standardizing the laws of various jurisdictions").

The New Jersey Supreme Court has determined that recognition of common law claims such as negligence in assessing a disputed funds transfer "would be precisely the type of resort to principles of law or equity outside of Article 4A that the Legislature expressly sought to avoid.". ADS Assocs. Grp., Inc. v. Oritani Savings Bank, 219 N.J. 496, 518-19, 520 (2014). Third Circuit courts have likewise repeatedly concluded that Article 4A expressly preempts common law claims. See Harborview Capital Partners, LLC v. Cross River Bank, 600 F. Supp. 3d 485, 496 (D.N.J. 2022) ("Guided by the New Jersey Supreme Court's holding in ADS, I hold that Harborview's common-law claims for negligent misrepresentation, promissory estoppel, and breach of contract are preempted by Article 4A."); see also Remtek Servs. v. Wells Fargo Bank, N.A., 2020 U.S. Dist. LEXIS 7678, at *7 (D.N.J. Jan. 16, 2020) (quoting N.J.S.A. 12A:4A-102 cmt. 1) ("The Official Comment to Article 4A makes clear that its provisions are 'intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation [they cover].'"); Essgeekay Corp. v. TD Bank, N.A., 2018 U.S. Dist. LEXIS 214691, at *17 (D.N.J. Dec. 19, 2018) (quoting ADS Assocs. Grp., Inc., 219 N.J. at 522) ("Plainly, Article 4A provides a comprehensive remedy to address Plaintiff's injury arising out of the alleged fraudulent transfers, and to allow Plaintiff's common law claims to go forward in the absent of such a special relationship would be to allow

Plaintiff to sidestep the 'careful and delicate' scheme of loss allocation contemplated and expressed by the legislature.").

Plaintiff alleges that TD Bank had a duty to protect her funds, that TD Bank did not implement all recommended online banking security protocols, and that a third-party tricked her into going to a TD Bank store and directing TD Bank to send a wire transfer. [See Complaint, Doc. No. 1-1, ¶¶ 42-46, 47-55, 56-61, 62-67, 74-82, and 83-89]. Even accepting these allegations as true, for purposes of this motion only, Plaintiff's claims fail as a matter of law because the UCC displaces them. UCC Article 4A comprehensively governs funds transfers. See N.J.S.A. 12A:4A-101. The UCC was drafted specifically to address the intricacies of financial transactions and the obligations of both bank and customer. It would contradict well-settled law to allow Plaintiff to proceed with common law claims and broad-brushed supposed legal duties that are not found in the UCC. Because Plaintiff's common law claims cannot be maintained in light of the UCC, Counts One, Two, Three, Four, Six, and Seven should be dismissed with prejudice.

**III.  Even if the Court finds that Plaintiff's Common Law Causes of Action are Not Displaced by the UCC, the Common Law Claims Independently Fail as a Matter of Law.**

In an effort to escape the loss allocation established by the UCC, Plaintiff has asserted numerous common law claims. Despite the UCC's wholesale displacement

of Plaintiff's common law claims, and independent of that analysis, Plaintiff's non-UCC claims are not viable:

## A. Common Law Negligence.

As discussed in Section II above, Plaintiff's common law negligence claim is preempted by the UCC. Even if the Court were to find that Plaintiff's negligence claim was not preempted, Plaintiff's claim still fails as a matter of law. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015).

It is well established that the relationship between a bank and depositor is generally not fiduciary in nature. Klemm v. Labor Cooperative Nat'l Bank, 117 N.J.L. 284, 287 (E. & A.1936). "Absent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor and is not liable to its depositor in negligence for failing to uncover a major theft." Globe Motor Car Co. v. First Fid. Bank, N.A., 273 N.J. Super. 388, 395 (Law. Div. 1993), aff'd sub nom. 291 N.J. Super. 428 (App. Div. 1996); see also ADS Assocs. Grp., Inc., 99 A.3d at 361 ("In Article 4A, the Legislature has treated electronic funds transfers as a distinct category of transactions governed by special rules, and has carefully limited the liability of banks to refund money transferred in accordance with a payment order that the customer has not authorized."). Plaintiff's Complaint

does not allege any facts that could create a duty on the part of TD Bank to manage or monitor Plaintiff's financial activity, much less to override Plaintiff's direction to transfer her own funds.  Indeed, "imposing a duty on a bank that would obligate it to be responsible for its depositor's financial affairs would be impractical as a matter of public policy." <u>Globe Motor Car Co.</u> 273 N.J. Super. at 395.

The Complaint is devoid of allegations that so much as suggest that the relationship between Plaintiff and TD Bank was anything other than bank and depositor. TD Bank thus had no legal duty to monitor Plaintiff's account or to override her direction.  Plaintiff's negligence claims fail as a matter of law.

### B.    Breach of Contract.

While Plaintiff alleges the existence of an "agreement" between her and TD Bank, Plaintiff fails to plead sufficient facts to support a breach of contract claim. A search of the Complaint fails to reveal facts which could support a finding that TD Bank breached any obligation under the alleged agreement.  Finally, a plaintiff's breach of contract claim, predicated on a bank's actions or omissions with respect to funds transfers is "the very subject matter covered by Article 4A" and is thus preempted by the UCC. <u>See</u> <u>LD Mgmt. LLC v. First Republic Bank, Inc.</u>, 2022 U.S. Dist. LEXIS 175925, at *19 (D.N.J. Sep. 27, 2022) (citing <u>Harborview Capital Partners, LLC</u>, 600 F. Supp. 3d at 490). Therefore, Plaintiff's breach of contract claim fails as a matter of law and should be dismissed.

### C. Breach of Fiduciary Duty.

The Second Count in Plaintiff's Complaint alleges TD Bank breached its fiduciary duty to Plaintiff. This claim fails as a matter of law. As set forth above, it is well established that the relationship between a bank and depositor is generally not fiduciary in nature. Klemm, 117 N.J.L. at 287. The relationship between a bank and its customer is akin to a debtor-creditor relationship, which does not create a fiduciary duty. Globe Motor Car Co., 273 N.J. Super. 388 (Law Div. 1993); Pagano v. United Jersey Bank, 143 N.J. 220, 233 (1996) ("[W]hen a bank accepts a deposit from a depositor for either a checking or savings account, a creditor-debtor relationship typically is established."); see also United Jersey Bank v. Kensey, 306 N.J. Super. 540 (App. Div. 1997) (noting that ordinarily a "bank's relationship with a depositor is one of debtor-creditor," and "[t]he virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty.").

### D. Common Law Fraud.

Under New Jersey law, the five elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Reasonable reliance

"must be found to be justifiable under the circumstances." Nat'l Premium Budget Plan Corp. v. Nat'l Fire Ins. Co. of Hartford, 97 N.J. Super. 149, 211 (Law Div. 1967) (internal quotation marks and citation omitted), aff'd, 106 N.J. Super. 238 (App. Div.), cert. denied, 54 N.J. 515 (1969).

A plaintiff alleging fraud "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also United States ex rel. Petras v. Simparel, Inc., 857 F.3d 497, 502 (3d Cir. 2017) (first quoting In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002) and then quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004) ("Under Rule 9(b), 'the circumstances constituting fraud or mistake shall be stated with particularity,' and a party must plead his claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'").

Plaintiff's Complaint lacks even formulaic allegations that could support a *prima facie* fraud claim. Plaintiff alleges in Count Six that "TD Bank made representations to Plaintiff that it used a commercially reasonable fraudulent transaction detection system to secure its bank accounts." [See Complaint, Doc. No. 1-1, ¶ 75]. Plaintiff further alleges that TD Bank intended that Plaintiff rely on those

representations and further that TD Bank knew it did not use a commercially reasonable fraudulent transaction detection system. Id. at ¶¶ 76-79.

Moreover, the Complaint lacks specificity regarding the dates, times or places of the alleged representations, what was represented, or any details regarding the causal connection between Plaintiff's alleged loss and TD Bank's alleged conduct. Complaint, *passim*. These allegations are nothing more than recitations of the elements of a common law fraud claim, without any factual support. Plaintiff's fraud claim falls woefully short of the heightened pleading standard for common law fraud. Plaintiff's fraud claim should therefore be dismissed as a matter of law for failure to state a cognizable claim.

## IV. Plaintiff's New Jersey Consumer Fraud Act Claim is Also Displaced by the UCC.

Count Five of the Complaint alleges, with no degree of specificity, that TD Bank violated New Jersey's Consumer Fraud Act ("CFA"). See N.J.S.A. 56:8-1, *et seq.* The New Jersey Appellate Division has held that a claim under the CFA is displaced by the UCC where the plaintiff's allegations challenge whether the bank's acts and omissions conform to general banking practices and procedures. See Est. of Paley v. Bank of America, 420 N.J. Super. 39, 42-43, 47-58 (App. Div. 2011). In Paley, the Appellate Division reasoned that "many of plaintiff's arguments in support of her contention that the CFA should apply are couched in terms of the

reasonableness of the bank's conduct and whether the bank exercised ordinary care." Id. at 58. The Court concluded that, to the extent the plaintiff sought to hold the bank "to a standard of reasonableness and ordinary care different than the UCC standard, she creates an irreconcilable conflict with the code specifically designed to bring uniformity to commercial transactions." Id.

Furthermore, Plaintiff has failed to adequately allege a claim against TD Bank under the CFA. "The CFA, which affords private citizens with a cause of action under limited circumstances, provides in relevant part: 'Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act … may bring an action … in any court of competent jurisdiction.'" Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 280 (D.N.J. 2011) (quoting N.J.S.A. 56:8-19).

"To state a private cause of action under the CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Id. (quotation marks and citation omitted). "There are three categories of unlawful conduct under the CFA: (1) affirmative acts, i.e., misrepresentations; (2) omissions; and (3) regulatory violations." Id. (quotation marks and citation omitted). Furthermore, and

importantly, "Fed. R. Civ. P. 9(b)'s pleading requirements apply to CFA claims." Id. at 279.

Plaintiff's Complaint, related to her $41,000.00 wire funds transfers, cannot support a CFA claim. The CFA is designed "to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 514 (3rd Cir. 2006) (quotation marks and citation omitted). Here, Plaintiff does not allege any unlawful conduct in connection with the sale or advertising of a good or service. Rather, Plaintiff generally alleges that TD Bank has "used unconscionable commercial practices, deception, and misrepresentations in connection with the provision of goods and services to Plaintiff." See Complaint, Doc. No. 1-1, ¶ 69. These allegations are impermissibly conclusory under federal case law. See Green, 279 F.R.D. at 279 (explaining that Fed. R. Civ. P. 9(b)'s particularity requirement applies to CFA claims).

## V. Plaintiff's UCC Claim Fails as a Matter of Law.

Finally, Plaintiff's Eighth Count alleges TD Bank is liable due to its "failure to verify [the] funds transfer." Plaintiff alleges that TD Bank "never offered Plaintiff a commercially reasonable security procedure" to protect her accounts and "did not verify the unauthorized wire transfers" through a commercially reasonable security procedure. See Complaint, Doc. No. 1-1, ¶¶ 92-93. Plaintiff further contends that

"[t]he unauthorized wire transfers were not authorized by Plaintiff or any of her agents and representatives." Id. at ¶ 96.[2]

"UCC Article 4A was enacted by the Legislature in 1994 to address the subject of electronic funds transfers." ADS Assocs. Grp., Inc., 219 N.J. at 511. A "[f]unds transfer" is defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." N.J.S.A. 12A:4A-104(1). The "[p]ayment order" is the "instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." N.J.S.A. 12A:4A-103(1)(a).

"Article 4A addresses in detail the circumstances under which a bank may conclude that a payment order for a transfer of funds is properly authorized." ADS Assocs. Grp., Inc., 219 N.J. at at 512. "Pursuant to Article 4A, a payment order can be deemed authorized or effective through two alternative means." Harborview Capital Partners, LLC, 600 F. Supp. 3d at 490. According to N.J.S.A. 12A:4A-202(1), "[a] payment order received by the receiving bank is the authorized order of

---

[2] Plaintiff's generic allegation regarding the "unauthorized" wire transfer in paragraph 96 of the Complaint is inconsistent with the specific allegations in paragraph 18 of the Complaint wherein Plaintiff alleges that she went to TD Bank's Bloomfield store to send the subject wire transfer. [See Complaint, Doc. No. 1-1, ¶¶ 18, 96].

the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." Alternatively, under N.J.S.A. 12A:4A-202(2):

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

"Section 202(1) applies where, as here, the customer actually does authorize a transfer through the authorized signatory on the account—***even if it turns out that the customer ordered the transfer only because it had been defrauded by some third party***. Harborview Capital Partners, LLC, 600 F. Supp. 3d at 494 (emphasis added). Alternatively, "Section 202(2) does not nullify 202(1), but rather posits a second scenario under which the bank may safely execute a transfer order, even if it turns out to have ***not*** been actually authorized." Id. (emphasis in original).

N.J.S.A. 12A:4A-204 "defines the circumstances under which a customer may be awarded a refund of funds found to have been transferred without authorization." ADS Assocs. Grp., Inc., 219 N.J. at 513. In sum, "whether a payment order is authorized is a threshold inquiry; if the order was authorized in fact by the

person who is the designated signatory for the customer, the outcome does not thereafter depend on whether the bank also verified the payment order pursuant to commercially reasonable procedures." Harborview Capital Partners, LLC, 600 F. Supp. 3d at 495. "The customer who, sadly, has been the victim of a third-party fraud cannot shift the loss to a bank that faithfully executed the customer's instructions to implement a transfer." Id. at 495-96.

Like in Harborview, here, Plaintiff authorized the $41,000.00 funds transfer at issue in Plaintiff's Complaint. [See Complaint, Doc. No. 1-1, ¶ 18] ("Plaintiff thereafter went to the TD Bank in Bloomfield and provided those wiring instructions to TD Bank."). Plaintiff, having allegedly received wire instructions from a fraudulent actor, proceeded to her local TD Bank store and instructed TD Bank to transfer the $41,000.00. That the Plaintiff was ultimately defrauded by a third-party is immaterial to the "threshold inquiry" of whether the funds transfer was authorized. See Harborview Capital Partners, LLC, 600 F. Supp. 3d at 495. Moreover, the extent to which TD Bank has or has not adopted the online banking security protocols referenced in the Complaint is immaterial given the fact that no portion of the subject wire took place online. [See Complaint, Doc No. 1-1, ¶¶ 18; 27-34].

Here, assuming for purposes of this motion that the facts as alleged in the Complaint are true, the $41,000.00 funds transfer was authorized, as Plaintiff herself

acknowledges. Accordingly, Plaintiff's eighth count pursuant to Article 4A of the UCC should be dismissed as a matter of law.

## **CONCLUSION**

For the reasons set forth above, TD Bank respectfully requests that the Court dismiss Plaintiff's Complaint as to TD Bank with prejudice.


Dated: February 20, 2024                    Respectfully submitted,

                                            *s/ Jennifer A. Harris*
                                            Jennifer A. Harris, Esq.
                                            **BROWN & CONNERY, LLP**
                                            6 N. Broad Street
                                            Woodbury, NJ 08096
                                            Telephone: 856-812-8900
                                            Facsimile: 856-853-9933
                                            jharris@brownconnery.com